**SO ORDERED.**

**SIGNED this 23 day of November, 2010.**



_Dale L. Somers_
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for on-line use but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**ALTERNATE FUELS, INC.,**

                **DEBTOR.**

**CASE NO. 09-20173**
**CHAPTER 11**

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS FILED BY JOHN W. CAPITO**

The matter under advisement is the Motion to Dismiss filed by John W. Capito (hereafter

"Capito") on November 25, 2009.[1]  The motion asserts that Capito was the sole stockholder and

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the
Standing Order of the United States District Court for the District of Kansas that exercised authority
conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code
and all proceedings arising under the Code or arising in or related to a case under the Code, effective July
10, 1984.  A motion to dismiss for failure of authority to file a petition on behalf of a corporation
concerns the administration of the estate and is a core proceeding which ths Court may hear and
determine as provided in 28 U.S.C.§ 157(b)(2)(A).  There is no objection to venue or jurisdiction over the
parties.

director of Debtor Alternate Fuels, Inc. (hereafter "AFI") on January 28, 2009, when the

voluntary petition for relief was filed, and that Larry W. Pommier (hereafter "Pommier"), who

signed the petition as president of AFI, lacked authority to file this case. Debtor, the Chapter 11

Trustee, Christopher J. Redmond, and two creditors oppose the motion. An evidentiary hearing

was held. Capito appeared in person and by counsel Rocky T. Cannon and Richard Koehler.

The Trustee appeared in person and by counsel P. Glen Smith and Christopher J. Redmond of

Husch Blackwell Sanders, LLP. Debtor appeared by Larry W. Pommier, President, and by

counsel Todd Luckman of Stumbo Hanson, LLP. There were no other appearances. Following

the submission of suggested findings of fact and conclusions of law, the Court took the matter

under advisement. It is now ready to rule and, for the reasons stated below, denies the Motion to

Dismiss.

**FINDINGS OF FACT.**

### A. Procedural History

Debtor AFI filed its Voluntary Petition ("Petition") under Chapter 11 of the Bankruptcy

Code on January 28, 2009.[2] The Petition is signed by Larry W. Pommier as president of Debtor.

On February 12, 2009, John W. Capito ("Capito") filed his first Motion to Dismiss ("First

Motion to Dismiss"),[3] in which he claimed to be Debtor's sole shareholder, chairman, president,

and director, and asserted that he had the sole authority to institute a voluntary petition under

Chapter 11, that Pommier was not authorized to sign on behalf of Debtor, and that this

---

[2] Since the filing of the Petition, thirteen proofs of claims have been filed in this case, totaling approximately $11,247,349.18, with assets of approximately $5,000,000.00 available for possible distribution.

[3] Doc. 19.

2

bankruptcy case should be dismissed. On March 4, 2009, Debtor filed its objection to Capito's First Motion to Dismiss.[4] Debtor disputed Capito's claim of ownership, position, and authority. Debtor argued that Capito failed to abide by the proper statute in moving for dismissal and that dismissal would not be in the best interests of the creditors and the estate. On May 27, 2009, this Court entered an "Order Setting Bar Date For Proofs of Interest," directing that proofs of interest be filed forty-five days after notice of the bar date was made.[5] On May 29, 2009, a "Notice of Bar Date for Proofs of Interest"[6] was filed showing that the bar date for proofs of interest was July 13, 2009, and a "Certificate of Service"[7] was filed the same day, showing service upon Capito, among others, of that Notice. Capito did not file a Proof of Interest by the deadline. On June 12, 2009, the Court entered an order appointing Christopher J. Redmond as the Chapter 11 Trustee of the estate.[8]

On June 17, 2009, attorney Scottie S. Kleypas entered her appearance and request for notices on behalf of Capito. On June 17, 2009, Capito filed a motion to withdraw his First Motion to Dismiss without prejudice "to raising the issues contained in the Motion for Dismissal at a later date."[9] The Court granted the withdrawal motion on June 18, 2009.[10] On November

---

[4] Doc. 41.

[5] Doc. 114.

[6] Doc. 117.

[7] Doc. 119.

[8] Doc. 130.

[9] Doc. 142.

[10] Doc. 144.

3

25, 2009, Capito filed a second Motion to Dismiss ("Second Motion to Dismiss"),[11] in which he once again argued that as of January 2009 he was AFI's sole shareholder, officer, and director, and that there was no authority to file the case on behalf of AFI. He requested that the case be dismissed. Debtor,[12] the Trustee,[13] Traveler's Insurance Company,[14] and the Continental companies[15] objected.

The Second Motion to Dismiss is the matter before the Court. Contrary to the statement of Capito in his trial brief,[16] there are not two motions to dismiss before the Court. The First Motion to Dismiss was withdrawn. The fact that it was withdrawn without prejudice means that the withdrawal did not per se bar raising the issues asserted in the future; it does not mean that the first motion remained pending.

## B. SUBSTANTIVE FACTS.

AFI previously filed for relief under Chapter 11 on December 9, 1992. A plan was confirmed in 1993. AFI was winding up its coal mining operations in Kansas and transitioning to a mining operation known as the Blue Mound Mine, located in Missouri. AFI held permits and acquired leases which allowed AFI to mine the Blue Mound Mine. The permits required that various bonds be submitted as surety for the reclamation of the Blue Mound Mine site properties. In 1993, the bankruptcy court confirmed a plan under which a trustee, J. Kevin

---

[11] Doc. 242.

[12] Doc. 225.

[13] Docs. 297 and 375.

[14] Doc. 315.

[15] Doc. 316.

[16] Doc. 405.

4

Checkett, operated AFI's business, but in 1996, the trustee ceased operations, abandoned the assets of AFI to various secured creditors, and resigned as trustee.[17]

After the 1992 bankruptcy, John Warmack ("Warmack") ultimately acquired all of the stock ownership of AFI, provided certain new reclamation bonds and replacement reclamation bonds, and took over the operations and control of AFI. About the same time as AFI's financial failure under the first plan and the trustee's abandonment of AFI's assets, Warmack formed Cimarron Energy Company, LLC ("Cimarron"), as a limited liability company with the Arkansas Secretary of State. Warmack owned ninety-nine percent of Cimarron and Pommier owned one percent. Cimarron became the operating company of the mining operations on the Blue Mound Mine sites.

The AFI Corporate Annual Report filed with the Kansas Secretary of State on December 4, 1996, reflected that Larry W. Pommier (president) and Gary H. Hanson (secretary) were the officers of AFI, and John Warmack was the sole director of AFI. The shareholders were listed as David C. Utermoehlen, George M. Barberich, Utermoehlen Trucking, Inc., and Lewis G. Kalm. The next available Corporate Annual Report filed on behalf of AFI was filed on December 3, 1999, with the Kansas Secretary of State, and reflected that Larry W. Pommier (president) and Gary H. Hanson (secretary) were the officers of AFI and Warmack was the sole director of AFI. The sole shareholder was listed as Warmack. Warmack remained as the sole director and shareholder in AFI's Corporate Annual Report filed February 14, 2000. Although there are no corporate minutes reflecting the resignation of Warmack as director, the AFI annual report filed with the Kansas Secretary of State on November 20, 2007, lists Larry Pommier as the sole

---

[17] Several of the substantial claims filed in this case arose during the prior Chapter 11 proceeding.

director, president, and secretary of AFI. Pommier testified that he was a board member in 2001 and at the time of trial. W.K. Jenkins testified that in December 2008, the only director was Pommier. There being no evidence to the contrary,[18] the Court finds that Pommier replaced Warmack as the sole director prior to the filing of the annual report in 2007 and that Pommier was president of AFI from at least 1996.[19]

On December 6, 1999, W.K. Jenkins and his wife, M. Earlene Jenkins, entered into an agreement to purchase from Warmack the ownership of AFI (specifically, all of Warmack's shares of common stock of AFI, consisting of 530 shares), 99% of the outstanding interest in Cimarron, certain equipment that was owned by Cimarron, and an assignment of the certificates of deposit, with a total principal value of approximately $1,300,000.00, that were pledged to the State of Missouri as a bond for the reclamation of the land associated with the Blue Mound Mine.[20] The 530 shares of AFI common stock evidenced by Certificate Number 17 issued to Warmack constituted all of the outstanding shares of stock in AFI.[21] W.K. Jenkins and M.

---

[18] Capito's evidence, as discussed below, challenges Pommier's status of director following the actions of Capito and W.F. Jenkins on December 8, 2008, not prior to such time.

[19] In his legal brief in support of his motion to dismiss, Capito states that Pommier was the president, secretary, and director of AFI immediately preceding the December 6, 1999, Agreement for Sale of Interests Related to the Blue Mound Mine Located in Bates and Vernon Counties, Missouri between Jenkins and Warmack and that Pommier "retained those positions after" Warmack transferred his AFI stock. *See* Doc. 405, ¶¶ A(9) and H.

[20] The Jenkinses were allowed by the State of Missouri to receive interest accruing on the certificates of deposit.

[21] The witnesses consistently testified that 530 shares constituted all of the outstanding shares of AFI. The affidavit of W. K. Jenkins states that "from December, 1999 to December, 2008 the only shares issued and outstanding in AFI were 530 shares." Doc. 89. However, the AFI Corporate Annual Reports filed for tax closing dates of December 31,1994, December 31, 1995, December 31, 1996, and December 31, 2006, each state that the number of share of capital stock issued was 570. The discrepancy between the 570 shares previously reported as outstanding and the 530 shares held by Warmack and then transferred to Christie, although noted in Capito's proposed findings of fact and conclusions of law (Doc.

6

Earlene Jenkins paid $549,250.00 to Warmack, which by agreement was used to pay off the AFI debts secured by the Cimarron equipment. The Jenkinses also assumed liability on $203,000 of AFI's secured debt. At the time of the agreement, W.K. Jenkins believed that working with Pommier and his own political connections would allow him to complete the reclamation of the mining sites to the satisfaction of the State of Missouri, allowing for the sale of mining equipment valued at approximately $2.0 million dollars and the release of the certificates of deposit purchased from Warmack.

W.K. Jenkins was listed in the Federal Office of Surface Mining's Applicant Violator System (AVS), which essentially blocked him from owning stock in, or otherwise controlling, a surface coal mining company. Pommier indicated to W.K. Jenkins that although he may be required to reclaim the AFI mining site as a bondholder due to his ownership of the certificates of deposit, W.K. Jenkins would not be allowed to do so by the State of Missouri if he was a stockholder in AFI. W.K. Jenkins understood this and developed a plan under which the AFI stock ownership would be transferred directly from Warmack to a third party, rather than to W.K. Jenkins and his wife, M. Earlene. W.K. Jenkins contacted Mr. Michael Christie ("Christie"), his long time business associate, to receive the AFI stock. W.K. Jenkins and Christie entered into an agreement entitled Option to Purchase ("Option Agreement") dated December 6, 1999. Although the agreement is very ambiguous, the testimony was that pursuant to the Option Agreement, W.K. Jenkins sold Christie the right to purchase the AFI stock in order to avoid an AVS problem, as Christie was not AVS blocked, with consideration of $1,500,000.00 to be paid on or before December 6, 2004. This allowed W.K. Jenkins to retain

---

426), was not explained at trial.

his position as a bondholder. W.K. Jenkins told his wife about the sale of the stock to Christie. W.K. Jenkins directed Pommier as president of AFI to issue the new stock certificate for the 530 shares directly to Christie, thus reflecting that the transfer of ownership was from Warmack to Christie. Warmack's stock certificate was delivered to Pommier, and a new Certificate Number 18 was issued to Christie. The stock certificate issued to Christie did not indicate that it was encumbered or limited or contingent. Because W.K. Jenkins was on the AVS blocked list and because he wished to retain the right to reclaim the mine site if the need arose, no stock certificate of AFI was ever issued in the name of W.K. Jenkins, his wife, M. Earlene Jenkins, or both.

Pommier, the sole officer of AFI in December 1999, was not at that time aware of the Option Agreement or any other agreement between Christie and W.K. Jenkins concerning the AFI stock. Pommier only became aware of the alleged Option Agreement after this bankruptcy case was filed when Capito filed his first motion to dismiss. Pommier understood that Christie was the actual sole shareholder of AFI. Pommier was never advised of any alleged transfer of the AFI stock to W.K. Jenkins from Christie, nor was Pommier asked to reissue shares to W.K. Jenkins or Capito.

In a letter dated August 15, 2001, to Mr. Earl D. Bandy, Jr., Chief of the United States Department of the Interior, Office of Surface Mining, Reclamation and Enforcement, W.K. Jenkins stated, in part, "I or my wife M. Earlene Jenkins never owned any of the stock of AFI or had any membership in Cimarron LLC." Pommier, as president of AFI, drafted and submitted an affidavit dated September 12, 2001, to the Department of the Interior, Office of Surface Mining, Reclamation and Enforcement, stating, among other things, as follows:

I followed John Warmack's instructions by issuing the 530 shares of stock to Mr. Christie on that date [December 13, 1999]. At the same time Mr. Christie assumed a 99% ownership interest in Cimarron Energy Co., L.L.C.

On that same date John Warmack assigned his interest in all certificates of deposit that were posted to secure reclamation of land mined under permits issued to Alternate Fuels, Inc. under Missouri law to W.K. and M. Earlene Jenkins, Husband and Wife, tenants by the entirety.

From December 13, 1999 to the present all stock ownership of Alternate Fuels, Inc. and 99% membership interest in Cimarron Energy Co., L.L.C. [h]as been held by Mr. Michael Christie.

This affidavit was acknowledged (signed) by Christie, Warmack, and W.K. Jenkins. Between 1991 and 2008, W.K. Jenkins provided approximately $2,000,000 to AFI for reclamation of the Barton County land, and was otherwise involved in the reclamation. Pommier maintained the good standing of AFI as a Kansas corporation by filing the required Annual Reports for 2006, 2007 and 2008.

Although the AFI stock was issued to Christie, Christie did not pay the sums allegedly due under the Option Agreement to W.K. Jenkins for the AFI stock. In July of 2006, W.K. Jenkins engaged the law firm of Duggan, Shadwick, Doerr & Kurlbaum, which sent a demand letter to Mr. John Benge, alleged counsel for Christie, therein demanding that Christie turn over to W.K. Jenkins's counsel the AFI stock certificate that had been issued to Christie. There was no evidence that Christie had personal knowledge of the demand. Both W.K. Jenkins and Pommier testified that Christie did not turn over or surrender the AFI stock certificate at any time.

M. Earlene Jenkins did not testify. There was no evidence that she objected to the sale of the AFI stock to Christie or the filing of the current bankruptcy action.

9

The primary, if not sole, asset of AFI is the judgment proceeds of a prepetition law suit, *Alternate Fuels, Inc. v. Cabanas*, Case No. 4:02-cv-01182-JTM, filed in the United States District Court for the Western District of Missouri in 2002. AFI asserted claims against Cabanas, an employee of the State of Missouri, in the nature of tortious interference with its business activities, and obtained a judgment in the approximate amount of $7,000,000 against Cabanas on September 29, 2006. The judgment was affirmed by the United States Court of Appeals for the Eight Circuit on August 15, 2008. The State of Missouri, as the party responsible for payment of the judgment, filed an Complaint for Interpleader in Cabanas's name on September 10, 2008 in the United States District Court for the Western District of Missouri, and deposited with the court the judgment proceeds, with interest, in the amount of $7,110,23.21.[22] This prompted many persons, including W.K. Jenkins, to make claims against AFI.[23] Pommier knew he was not qualified to evaluate the claims, and determined that the only way to clear the claims was to put AFI in bankruptcy and let a judge decide. W.K. Jenkins tried to negotiate a settlement where Jenkins would pay $500,000 and Pommier would not put AFI in bankruptcy. Pommier declined and advised W.K. Jenkins that he was going to file for relief on behalf of AFI. On December 22, 2008, a special meeting of the board of directors of AFI was held at which it was resolved that the corporation should seek immediate relief under Chapter 11

---

[22] *See* Doc. 34.

[23] AFI on March 1, 2003 had assigned $3,000,000 of its claim against Cabanas and the State of Missouri to W.K. Jenkins. On the same date, AFI, by Larry W. Pommier, President/Secretary, executed a promissory note to "Green Acres Farms W.K. & M. Earlene Jenkins TBE" in the amount of $2,370,761. Jenkins also alleges he provided AFI with $487,298.62 for AFI's litigation efforts and reclamation efforts related to Blue Mound Mine. AFI's Schedule D lists W.K. and M. Earlene Jenkins as having a secured claim of $4,437,704.39. Pommier is listed as holding a secured claim for $1,618,703.51. Unsecured nonpriority claims are listed on Schedule F as $3,247,339.15.

10

of the Bankruptcy Code. Pommier, the sole director, was present and waived any and all prior notice. Pommier presided as president. The AFI bankruptcy petition, signed by Pommier, was filed on January 28, 2009.

Despite Pommier's communications with W.K. Jenkins regarding AFI's filing under Chapter 11, W.K. Jenkins did not inform Pommier of the following transactions relating to the AFI stock or the AFI corporate meetings related thereto. On December 8, 2008, W.K. Jenkins and Capito met in Capito's apartment and worked out the basic terms of an agreement wherein Jenkins would sell the "corporate shell" of AFI to Capito, but Jenkins would retain the proceeds of the bonds (the certificates of deposit) and approximately $3.0 million dollars of the AFI judgment proceeds. The price for the AFI stock was to be determined after distribution of the judgment proceeds and after the reclamation was completed. Capito assumed that at that time the shares would have no value. This agreement was premised on the position that W.K. and M. Earlene Jenkins were the sole stockholders of AFI. M. Earlene Jenkins spoke with W.K. Jenkins by telephone during this meeting between W.K. Jenkins and Capito at Capito's apartment, but she was not present. Capito drafted what is called the "Notice of Special Shareholders Meeting of Alternate Fuels, Inc.," and it was signed by W.K. Jenkins on December 8, 2008, and by M. Earlene Jenkins sometime later as the "Owners of Stock Mortgage." This notice states the purposes of the meeting are to "ascertain the Common Shareholders of Record of Alternate Fuels, Inc. that are qualified to vote" and to "hold the belated annual meeting of stockholders for the Election of Directors of Alternate Fuels, Inc." The notice of stockholder meeting was not sent to Christie, the sole shareholder of record of AFI. Capito also drafted a document called "Special Shareholders Meeting of Alternate Fuels, Inc.," wherein it states, among other things,

11

that during a meeting on December 8, 2008, with Capito acting as chairman of the meeting, the AFI Stock Certificate Number 18 for 530 shares held by Christie was "declared by law null and void" for Christie's failure to exercise his option to purchase the shares; that the 530 shares of AFI Stock was sold to Capito for $10 and other valuable consideration; that Stock Certificate Number 19 was transferred to Capito; and that Capito was elected as the sole director of AFI. Finally, Capito drafted minutes of an alleged "Meeting of the Board of Directors of Alternate Fuel[s], Inc.," on December 8, 2008, stating, in part, that Capito was elected the president, secretary, and registered agent of AFI. No notice of the meeting of the board of directors was given to Pommier. On or about December 24, 2008, Capito filed with the Kansas Secretary of State documents stating that he was the resident agent of AFI. Pommier did not have knowledge of the December 8, 2008, meetings, or the actions taken at those meetings until February 12, 2009, when Capito filed his First Motion to Dismiss.

Neither Capito nor W.K. Jenkins have filed a Proof of Interest, despite the Notice of Bar Date sent to each of them by Debtor. Capito testified that he did not have any actual stock certificates showing ownership of AFI. The affidavit of W.K. Jenkins filed in this bankruptcy case states that the AFI Stock Certificate Number 18 issued to Christie was never returned.[24] W.K. Jenkins never had actual possession of the AFI stock certificate issued to Christie. On May 18, 2010, the Court issued an order requiring Capito to respond to the Trustee's Rule 2004 requests for Production of Documents, including the request for: "Any and all documents relating to the transfer of AFI stock from Mr. Jenkins to Mr. Capito, including but not limited to stock certificates, contracts, agreements, negotiation, state or federal government filings, and

---

[24] Doc. 89.

12

correspondence." On May 28, 2010, Capito responded: "Does not have any."

Article II of AFI's Bylaws provides that a person shall only be deemed a stockholder if the person is a stockholder of record on the books of the corporation and that all such transfers on the books are by surrender of the old certificate, properly endorsed, so that the existing shares can be cancelled. Christie was the shareholder of record on December 8, 2008, and at the time the Petition was filed. The Stock Certificate Number 18 issued to Christie states that the stock is transferable only upon the books of the corporation, endorsed by the holder. The corporate records do not reflect that Christie transferred his AFI stock to Jenkins or Capito.

Article III(2) of AFI's Bylaws provides that special meetings of shareholders are to be called by the president of the board of directors, upon the request of the shareholders. At a special meeting called for the purpose, the stockholders have the power "to remove any Director or officer from office."[25] Article IV(1) of AFI's Bylaws provides that "[e]ach director shall hold office until his successor is elected and qualified or until his earlier resignation or removal." Article IV(3) provides that a special meeting of the directors may only be called by the president or two members of the board. No provision in AFI's Bylaws provides for a special meeting of the board of directors called by the shareholders alone. Article III(4) of AFI's Bylaws provides that voting rights at shareholders' meetings are based upon the stock interests on record with the corporation.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A. Unless one or more of Capito's theories is sustained, AFI has proven that Pommier, as president of AFI, acted with authority when placing AFI in a voluntary Chapter 11 case.**

---

[25] AFI Bylaws, Art. III(9).

Capito's motion to dismiss for lack of jurisdiction is premised upon the theory that the voluntary petition signed by Pommier as president of AFI and the resolution of the AFI board of directors authorizing the filing, made at a meeting attended by Pommier as the sole director, were unauthorized. Whether a voluntary corporate bankruptcy petition was properly authorized is determined by applicable state law, as it is a matter not addressed by the Bankruptcy Code.[26] "If the . . . Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition."[27]

Under Kansas law, the business and affairs of a corporation are managed by its board of directors, except as is otherwise provided by statute or the articles of incorporation.[28] The decision whether to file for bankruptcy relief is a decision which must be made by the board; it is not a general power of a corporate officer.[29] "[T]here must be a majority vote of a quorum of the board of directors to file a corporate bankruptcy in Kansas."[30] A corporate officer acting pursuant to a resolution of the board of directors has authority to file a petition.

The Court has found that Pommier replaced Warmack as the sole director prior to the filing of the AFI annual report in 2007 and that Pommier was president of AFI from at least 1996. At a special director's meeting on December 22, 2008, attended only by Pommier, it was

---

[26] *Price v. Gurney*, 324 U.S. 100 (1945).

[27] *Id*. at 106.

[28] K.S.A. 17-6301(a).

[29] 15A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 7631.39 (current through Aug. 2010 update); *In re Moni-Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988).

[30] *Moni-Stat*, 84 B.R. at 757.

14

resolved that filing for relief under Chapter 11 would be in the best interests of AFI. The bankruptcy petition, signed by Pommier, as president of AFI, was filed on January 28, 2009. Therefore, unless Capito prevails on one of more of his theories as to why Pommier was not authorized to so act on behalf of AFI, the Court has jurisdiction of the case.

**B. The Court rejects Capito's arguments that Pommier lacked authority.**

### 1. The Court finds that Capito did not become president and sole director of AFI in December 2008.

Capito's primary argument as to why the Court lacks jurisdiction is the contention that the events of December 8, 2008, were effective to vest the ownership of all the outstanding shares of AFI stock in Capito, to remove Pommier as president, to remove Pommier or Warmack as sole director, and to place Capito in these positions. The Court finds that they were not.

The first building block of Capito's claim that he became the sole stockholder of AFI on December 8, 2008, is the assertion that M.K. Jenkins and M. Earlene Jenkins were the sole stockholders immediately preceding that date. He asserts two theories. First he contends that stock of AFI was not transferred to Christie in conjunction with the December 6, 1999, agreement between Jenkins and Warmack, whereby W.K. Jenkins and M. Earlene Jenkins agreed to purchase all of the stock of AFI, because the Option Agreement between W.K. Jenkins and Christie was invalid. Second, in the alternative, Capito asserts that if valid, the Option Agreement was not effective to make Christie the owner of the stock because he never paid Jenkins the agreed consideration and let the option lapse as of December 6, 2004.

The Court finds that neither the validity or nonvalidity of the Option Agreement nor the failure to pay the consideration stated in the Option Agreement are relevant or sufficient to hold that the Jenkinses rather than Christie were the record stockholders of AFI on December 6, 2009,

15

or thereafter.  As to AFI, the effectiveness of the transfer of the AFI stock from Warmack to Christie is determined by Kansas corporate law.  The validity of the Option Agreement and the effect of Christie's failure to pay the stated consideration are matters between Jenkins and Christie, which controversy is not before the Court.  The issue presented is the authority of Pommier to place AFI in a voluntary Chapter 11 case.

Under applicable Kansas corporate law, the Court finds that Christie was the stockholder of record in December 2008 and thereafter.  All the parties agree that at the request of W.K. Jenkins, upon the surrender of Warmack's AFI Stock Certificate Number 17 to Pommier, a new AFI stock certificate for 530 shares, Certificate Number 18, was issued to Christie.  There is no evidence that a certificate was ever issued to W.K. Jenkins and M. Earlene Jenkins.  The AFI bylaws provide:

> A person shall be deemed to be a stockholder only if he is a
> stockholder of record on the books of the corporation.  Transfers of
> stock will be made only on the books of the corporation upon the
> surrender of the old certificate properly endorsed.

Christie was the stockholder after the issuance of Certificate Number 18.  There is no evidence that Certificate Number 18 was ever surrendered to the corporation, or even to W.K. Jenkins.

Registration of ownership of stock is essential for the purported stockholder to have rights against the corporation.  A leading commentator on corporate law states:

> When there is a valid provision in the charter, statute, or
> bylaws of a corporation that its shares shall be transferrable only
> on the books, a transfer must be registered, or, at the least, notice
> thereof given to the corporation for the purpose of registration, in
> the absence of a waiver or estoppel, before the transferee can
> acquire any rights as against the corporation other than the right to
> have the transfer registered, or incur any liability, and before the
> transferor can be relieved from liability to the corporation.  This is
> true in all jurisdictions, whether it is held that an unregistered

16

transfer passes the legal title, or merely an equitable title, as between the transferor and transferee. In all matters relating to the internal management of the corporation, it is entitled to treat those persons whose names appear on its books as shareholders, and all transfers of stock are invalid and of no effect as against it until they have been entered on its books. Until such entry there is no privity of contract existing between the transferee and the corporation which can be enforced by one against the other, and the transferee cannot compel the corporation to issue certificates to him or her until the entry is made.[31]

This rule is followed in Kansas. In 1911, the Kansas Supreme Court stated:

Before one who purchases stock from a stockholder and member of a corporation is entitled to have the shares transferred and to have the rights and privileges of a member of the corporation, he must comply with the statutes, by-laws, and regulations governing such transfers and the admission of new members.[32]

In this case, since Christie had been issued stock by the corporation and the Jenkinses had not been issued any stock by the corporation, Christie was the stockholder of record from the date of issuance of the stock in December 1999 and thereafter, including December 8, 2008, when W.K. Jenkins and Capito met. Christie never surrendered his certificate and never attempted to transfer it to a third party, such as the Jenkinses or Capito. Therefore, W.K. Jenkins had no authority to act as a shareholder of AFI, and the events of December 8, 2008, whereby Capito became stockholder, director, and president of AFI are nullities as to the corporation.

The Court is not holding that W.K. Jenkins and his wife acquired no rights in the AFI stock as a result of the events in December 1999. The Jenkinses paid the consideration for the assets transferred to them by Warmack, including the AFI stock. W.K. Jenkins requested that the stock certificate be issued to Christie because W.K. Jenkins was listed on the AVS with the

---

[31] 12 *Fletcher Cyclopedia*, §5500.

[32] *Star Mutual Telephone Co. v. Longfellow*, 85 Kan. 353, 353, Syl. ¶ 1, 116 P. 506, 506 (1911).

17

Office of Surface Mining of the U.S. Department of the Interior. Christie paid no consideration to the Jenkinses or Warmack, but he became the stockholder of record. Christie therefore held the stock as nominee, agent, or "straw man" for the Jenkinses. As between the Jenkinses and Christie, because of the circumstances of the transfer and Christie's failure to perform the Option Agreement, the Jenkinses may have had a right to compel transfer of the stock to them. However, they never exercised that right. All W.K. Jenkins did was send a demand letter, to which there was no response. Absent a transfer of the stock from Christie to the Jenkinses in accord with the AFI bylaws and Kansas law, Christie, not the Jenkinses, had the rights of a stockholder of AFI.

Since the Jenkinses at most held an equitable interest in the stock of AFI held by Christie as the stockholder of record, all they could transfer to Capito was that equitable interest. Since Pommier was the president of the board of directors of AFI as of December 8, 2008, pursuant to Kansas law and the bylaws,[33] only he had the authority to call a special meeting of shareholders, at the request of shareholders. The Jenkinses, who without notice to Christie purported to call the shareholders' meeting of December 8, 2008, had no authority to do so. Further, assuming that a special meeting of shareholders had been requested by a shareholder of record and the meeting held, since Christie was the sole shareholder of record on December 8, 2008, pursuant to Kansas law,[34] he, not the Jenkinses or Capito, had the authority at such a special meeting to remove Pommier as director. Christie was not given notice of the meeting and did not attend. The actions reported in the minutes of the attempted special meeting held on December 8, 2008,

---

[33] K.S.A. 17-6501(e); AFI Bylaws, Art. III (2).

[34] K.S.A. 17-6301(k); AFI Bylaws, Art. III(9).

18

declaring the shares held by Christie null and void for failure to pay the consideration stated in the Option Agreement did not result in Capito being the shareholder of record. Therefore, the Court finds that the actions of W.K. Jenkins and Capito in December 2008 attempting to transfer stock ownership to Capito, attempting to hold a special meeting of shareholders, and attempting to remove Pommier as director and president are legal nullities as to the corporation.

Pommier, as the sole director of AFI, had authority on December 22, 2008 to hold a directors meeting for the purpose of authorizing the filing of a petition under Chapter 11 and to conclude at that meeting that a petition should be filed. Pommier, as president of AFI, had authority to sign the Chapter 11 petition on January 28, 2009, in accord with the prior resolution of the board of directors.

### 2. The Court finds that Pommier did not forfeit his authority to act for AFI.

The Court rejects Capito's position that Pommier was not the sole director of AFI until at least December 7, 2008 because he forfeited his office.[35] In his trial brief, Capito argues that Pommier forfeited his "authority to speak for AFI due to the overall defalcation of his corporate responsibilities."[36] The defalcations alleged are not supported by the trial evidence. For example, Capito alleges that Pommier secretly took funds "for himself which were destined for Mr. and Mrs. Jenkins." The funds cited are interest payments on CDs, which Pommier deposited to the account of Cimarron, not to his personal account.[37] Capito alleges that Pommier failed to file tax returns, but there was no evidence that returns were required, since AFI was not

---

[35] This argument was raised in Capito's trial brief (Doc. 405), but not in his suggested findings of fact and conclusions of law (Doc. 426), submitted following trial.

[36] Doc. 405, ¶ F.

[37] *See* Exh. 12.

19

operating a business. Capito questions Pommier's motivation for filing the Chapter 11 petition, but the testimony concerning the reason for filing and the events in this case convince the Court that the case was not filed for Pommier's personal benefit.

Further, assuming some defalcation which would have been a sufficient basis for removal from office, no action was taken to effectuate such removal. Under Kansas law, directors and officers serve until their successors are duly elected and qualified.[38] As found above, Pommier became the sole director prior to the filing of the AFI annual report in 2007. He was never removed from that position.

### 3. The Court rejects Capito's argument that Pommier was not elected as the sole director and Warmack continued in that position.

As an alternative to the argument that Pommier forfeited his office, Capito asserts in his suggested findings of fact and conclusions of law that Warmack, the director and shareholder of AFI before the 1999 sale transaction between Warmack and the Jenkinses, not Pommier, was the sole director in December 2008, since the corporate records do not reflect Pommier's election to that position.[39] This assertion is contrary to Capito's statements in his trial brief that Pommier "was the president and secretary and director of AFI prior to AFI being purchased by the Jenkins. He retained those offices after AFI was purchased by the Jenkins."[40] The testimony of Pommier and W.K. Jenkins fully supports the Court's finding of fact that Pommier became the sole director sometime prior to the filing of the annual report in 2007.

The Court holds that Capito cannot prevail on his motion to dismiss based upon lack of

---

[38] K.S.A. 17-6301(b); AFI Bylaws, Art. IV(1).

[39] Doc. 426, p. 16.

[40] Doc. 405, ¶ H.

evidence regarding the election of Pommier as director. The trial evidence established that Pommier held the position at the critical times. Prior to trial, Capito had filed a brief admitting that Pommier held that position from 1999 forward. The election of Pommier as the director was not an issue at trial. Debtor and the Trustee had no obligation to address the election of Pommier as director in order to establish that Pommier acted with authority when filing the voluntary petition on behalf of AFI.

**4. The Court rejects Capito's argument that the filing was unauthorized because the AFI corporate resolution authorizing the filing was not presented to the Court prior to trial.**

The Court also rejects Capito's argument that the Court lacks jurisdiction because the AFI corporate resolution dated December 22, 2008, was not presented to the Court either when the petition was filed, in response to Capito's First Motion to Dismiss, or in response to his Second Motion to Dismiss. Capito cites no authority for the apparent position that a corporation filing for relief under Chapter 11 must file a corporate resolution authorizing the filing. As stated above, the question of law is whether the action of filing the petition was properly authorized, not whether evidence of that authority was presented to the Court at a particular time. A copy of the "Minutes of a Special Meeting of [the] Board of Directors" of AFI, dated December 22, 2008, was admitted into evidence at the trial.[41] The minutes reflect that after reviewing the status of AFI since the filing of the interpleader action, the director passed a resolution that AFI should seek immediate relief under Chapter 11 of the Code. This is what the law requires.

**5. The Court rejects Capito's additional miscellaneous arguments.**

---

[41] Exhibit AFI-A.

21

The Court has carefully reviewed Capito's trial brief and suggested findings of fact and conclusions of law. They contain a number of additional assertions, none of which have merit.

In particular in Capito's trial brief, he argues that the firm of Stumbo Hanson, LLP, which assisted Pommier in filing for relief, has a conflict of interest with respect to W.K. Jenkins. Capito also argues that the Trustee and the firm approved by the Court as his counsel are not disinterested persons under 11 U.S.C. § 101(14). Capito also complains that the reclamation efforts undertaken by the Trustee have failed to provide any benefit and the Jenkinses, who allegedly have the most interest in seeing that the reclamation effort is successfully completed, have not been consulted about the status of reclamation. Capito also makes numerous suggestions as to how this case should proceed under his control in the event it is not dismissed. The Court finds that these matters are not relevant to the question of Pommier's authority to file a voluntary petition on behalf of AFI.

## C. Conclusion that Pommier acted with authority when filing the voluntary petition on behalf of AFI.

For the foregoing reasons, the Court finds that Pommier was the sole director and president of AFI in December 2008 and January 2009. Capito's arguments to the contrary are not sustained. The bankruptcy filing was authorized by the AFI board of directors at a meeting held on December 22, 2008, and Pommier acted with authority when filing the petition on January 28, 2009, thereby vesting this Court with jurisdiction of the case.

## D. In the alternative, if Capito rather than Pommier had authority to file a voluntary petition on January 28, 2009, Capito ratified Pommier's unauthorized act.

AFI's and the Trustee's joint proposed findings of fact and conclusions of law present some alternative arguments as to why Capito's motion to dismiss should be denied. First, it is

22

argued that, even if the filing was not properly authorized because Capito became the sole director and president of AFI in December 2008, Capito is estopped from contesting jurisdiction based upon Pommier's lack of authority to file the case because Capito ratified the filing by his subsequent actions. This argument is based upon the facts that although Capito filed his First Motion to Dismiss on February 12, 2009, within approximately two weeks of the filing, he moved to withdraw the motion on June 17, 2009 and the withdrawal motion was granted the following day. Capito did not file the Second Motion to Dismiss now before the Court until November 25, 2009, approximately five months later. During that time the bankruptcy moved forward without objection by Capito.

Debtor and the Trustee cite *Hager*[42] in support. In *Hager*, on April 26, 1993, Roop, a fifty per cent shareholder, filed a voluntary Chapter 7 case on behalf of Preference, Ltd., incorporated under Virginia law. On December 20, 1994, after the trustee had demanded turnover of funds from Hager, also a fifty percent stockholder, Hager moved to dismiss the case and all related adversary proceedings. Hager claimed that Roop did not have authority to place Preference in bankruptcy because he had improperly called the special meeting of shareholders and wrongly assumed that Hager was precluded from voting. This contention of lack of authority was in accord with Virginia law. However, the bankruptcy court denied the motion to dismiss, holding that the doctrine of laches prevented Hager from raising this jurisdictional argument twenty months after the filing and, in the alternative, that Hager's failure to participate in the shareholders' meeting after notice constituted a waiver of any claim that Roop acted without authority. The district court affirmed on the basis that Hager had ratified Roop's lack of

---

[42] *Hager v. Gibson*, 108 F.3d 35 (4th Cir. 1997).

Case 09-20173   Doc# 456   Filed 11/23/10   Page 23 of 28

proper authority to file, although it ruled that the doctrine of laches was not available with respect to the jurisdictional issue. On appeal, the Fourth Circuit Court of Appeals also affirmed. It held that even though Roop's filing was not properly authorized under Virginia corporate law, "under Virginia law, the unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of the persons with power to have authorized it originally."[43] Such ratification could serve as the local law source of authority required for filing and relate back to validate the filing. As to the acts which constituted ratification, the court found Hager knew of the bankruptcy no later than November 1993, participated as a party in an adversary proceeding from August 1994, but raised no objection until December 20, 1994, and

> [d]uring all this period Hager as a fifty percent shareholder in this closely held corporation received the benefits of the protection against the claims of creditors that was provided his equity interest by the automatic stay provisions invoked by the bankruptcy filing. During all this period, Hager took no step through available corporate governance procedures to attempt withdrawal of the corporation from the voluntary proceeding.[44]

The Court finds that the rationale of *Hager* is applicable in this case. Under Kansas law, as under the Virginia law applied in *Hager*, the unauthorized filing of a voluntary petition of a corporation may be ratified by subsequent acts of the persons with power to have authorized it originally. Kansas has long applied the doctrine of ratification to unauthorized acts of

---

[43] *Id.* at 40.

[44] *Id.*

corporations. The Kansas Supreme Court[45] and the Kansas Court of Appeals[46] have recently

quoted with favor the following statement of the Kansas Supreme Court in an 1874 case:

> It is a general principle, of almost universal application, that
> whenever a state, county, corporation, partnership, or person has
> power originally to do a particular thing, it also has the power to
> ratify and make valid an attempted effort to do such thing,
> although the same may have been done ever so defectively,
> informally, or even fraudulently in the first instance. This
> principle is so elementary in its nature that it requires no citations
> of authorities to uphold it.[47]

The Court of Appeals applied the ratification doctrine when upholding a homeowners

association's increase in the number of directors and amendment of its bylaws to change voting

rights, even though proper corporate formalities had not been followed, because the

corporation's actions had been consistent with the changes since the changes had been

defectively enacted.

In this case, if Capito replaced Pommier as the AFI director and president in December

2008, which the Court has previously found not to be correct, the actions of Capito during this

proceeding until the Second Motion to Dismiss was filed on November 25, 2009, constitute

implied ratification of the authority of Pommier to place AFI in bankruptcy on January 29, 2009.

During this period, Capito did not pursue his position that the filing was unauthorized, and AFI

benefitted from the bankruptcy automatic stay, the orderly claims and interests filing procedure,

and the appointment of a trustee with the purpose of undertaking the reclamation process, with

---

[45] *General Bldg. Contractors, L.L.C., v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 539, 66 P.3d 873, 882 (2003).

[46] *Picard v. Sugar Valley Lakes Homes Ass'n*, 37 Kan. App.2d 210, 213-14, 151 P.3d 850, 853-54 (2007).

[47] *State v. Board of Comm'rs*, 12 Kan.*426, *439, 1874 WL 646 *7 (1874).

the concurrence of the major creditors and the State of Missouri. Reports to the Court by the Trustee indicate significant progress toward accomplishment of AFI's reclamation obligation has been taken during the bankruptcy. One might argue that benefits conferred while the First Motion to Dismiss was pending should not be considered. However, the Court rejects this position since the First Motion, which was filed before any substantial benefits had been accepted by AFI, was voluntarily withdrawn, rather than pursued. The withdrawal itself is evidence that Capito, who now claims to be the sole stockholder of AFI, elected to have AFI receive the benefits of the Chapter 11 filing. If AFI was controlled by Capito after December 8, 2008, Capito has accepted on behalf of AFI the benefits of protection under Chapter 11. Assuming that the filing for relief was not properly authorized, the filing has been impliedly ratified by the acceptance of those benefits.

**E. The Court rejects Debtor's and the Trustee's alternative arguments as to why the case should not be dismissed, even if Pommier lacked authority.**

The Trustee and Debtor make additional alternative arguments which the Court rejects as misplaced. The issue raised by the Second Motion to Dismiss is whether the Court has subject matter jurisdiction. This issue is unique because "not only is it impossible to foreclose the assertion of this defense by the passage of time or the notion of estoppel, but also it is impossible to cure or waive a defect of subject matter jurisdiction by consent of the parties."[48] As stated above, "[i]f the . . . Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to

---

[48] 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 1393 (3d ed. 2004); *e.g.*, *Henry v. Office of Thrift Supervision*, 43 F.3d 507 (10th Cir. 1994).

Case 09-20173   Doc# 456   Filed 11/23/10   Page 26 of 28

dismiss the petition."[49]  Laches, raised by Debtor and the Trustee, is therefore not a defense.

Although Capito's delay in objecting to the filing as unauthorized is a factor in determining

whether the filing has been ratified, the passage of time alone does not bar the raising of the

jurisdiction issue.

Likewise, the Court rejects the assertion that Capito is not a party in interest with

standing to raise the question of subject matter jurisdiction.  "[B]ecause of the fundamental and

systemic nature of the defense . . . , lack of subject matter jurisdiction may be asserted any time

by the court, sua sponte, either at the trial or appellate level."[50]  In fact, the Court has an

obligation to see that it has jurisdiction, and jurisdiction cannot be conferred by the action of the

parties.[51]  Therefore, once the possible absence of subject matter jurisdiction has been brought to

the attention of the Court, it has a duty to rule on the issue, notwithstanding the niceties of the

rules about parties in interest.  Capito's failure to file a proof of interest and his possible failure

to be a party in interest pursuant to § 1109(b) are not relevant.

For the same reason, Debtor's and the Trustee's arguments that even if Capito prevails on

his argument that the filing was unauthorized, the Court should not dismiss the case because of

the best interests of creditors is beside the point.  Either the Court has subject matter jurisdiction

or it does not; the interests of creditors do not figure in the equation.

**CONCLUSION.**

For the foregoing reasons the Court finds that it has subject matter jurisdiction.  Either

---

[49] *Price v. Gurney*, 324 U.S. at 106.

[50] 5B Wright & Miller, FEDERAL PRAC. & PRO., CIVIL § 1350 at p. 120.

[51] *Id*. at p. 120-28.

Pommier's filing of AFI's voluntary petition on January 29, 2009, was authorized, or if Pommier lacked such authority and Capito had become the sole shareholder, officer, and director of AFI in early December 2008, Capito by his conduct in not immediately pursuing dismissal ratified the filing by allowing AFI to accept the benefits of Chapter 11.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. The judgment based on this ruling stated above will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**JUDGMENT.**

**For the foregoing reasons, the Motion to Dismiss filed by John W. Capito is hereby denied.**

**IT IS SO ORDERED.**

**# # #**

28